887 P.2d 1088

Jared AMBROSE, a minor child, By and Through F. Dean Ambrose and Susan Ambrose, husband and wife, the natural parents of Jared Ambrose; F. Dean Ambrose, individually; and Susan Ambrose, individually, Plaintiff–Appellants,

v.

**BUHL JOINT SCHOOL DISTRICT # 412, Defendant–Respondent.**

No. 20821.

Court of Appeals of Idaho.

Dec. 8, 1994.

Petition for Review Denied Feb. 6, 1995.

582

Webb, Pedersen & Webb, Twin Falls, for appellants. Kenneth L. Pedersen argued.

Quane, Smith, Howard & Hull, Boise, for respondent. Brian D. Harper argued.

LANSING, Judge.

This action arose from personal injuries sustained by plaintiff Jared Ambrose, a minor, while he was playing baseball on a playground owned by the defendant, Buhl Joint School District No. 412. The district court granted summary judgment dismissing the action on the ground that the school district was exempted from liability by Idaho's Recreational Use Statute, I.C. § 36–1604. The district court also held that the attractive nuisance doctrine, under which a landowner may be liable for injuries sustained by a child playing on the landowner's premises notwithstanding the provisions of I.C. § 36–1604, did not apply to the circumstances of Jared's injury. Appellants, Jared Ambrose and his parents, Dean and Susan Ambrose, argue on appeal that a prima facie showing of all elements of the attractive nuisance doctrine has

been presented and that the judgment therefore should be reversed. We hold that because the application of the attractive nuisance doctrine as adopted in Idaho is limited to those situations where the child is attracted onto the defendant's land by the instrumentality that causes the injury, and because such attraction onto the land did not occur in this case, the district court was correct in granting summary judgment in favor of the school district.

## I

The school district owns a playground upon which are located several baseball diamonds with backstops. The school district allows "Pee Wee League" baseball games to be played on this field during the summer months while school is not in session. Jared Ambrose, then age eleven, went with his parents to watch one of these games. Jared met some of his friends at the game, and they decided to discontinue watching the game and instead play their own informal baseball game at an adjacent backstop on the same playground. The backstop was not permanently affixed to the ground. It had two "wing" panels that rotated forward and backward on hinges attached to a main, center panel. When correctly positioned, the two wings and the center panel form a "U" shape. At some time during this informal game, two of the children extended the wings outward until they were nearly in line with the center panel, thereby causing the backstop to become less stable. Jared was batting in front of the backstop when his brother, Kyle, climbed onto the top overhanging portion of the backstop, causing the backstop to topple forward onto Jared. Jared suffered a broken leg and other injuries.

Dean and Susan Ambrose brought this action against the school district on behalf of Jared and in their individual capacities. They alleged that the backstop was a dangerous structure constituting an attractive nuisance which caused Jared's injury, and that the school district was therefore liable.

The school district moved for summary judgment, asserting that it was exempt from liability by terms of I.C. § 36–1604.[1] The district court granted the motion. The court held that although the attractive nuisance doctrine presents an exception to a landown-

1. Portions of Idaho Code § 36–1604 pertinent to this case state:

Limitation of liability of landowner.—(a) Statement of Purpose. The purpose of this section is to encourage owners of land to make land and water areas available to the public without charge for recreational purposes by limiting their liability toward persons entering thereon for such purposes.

(b) Definitions. As used in this section:

1. "Land" means private or public land, roads, trails, water, watercourses, irrigation dams, water control structures, headgates, private or public ways and buildings, structures, and machinery or equipment when attached to or used on the realty.

2. "Owner" means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.

3. "Recreational Purposes" includes, but is not limited to, any of the following or any combination thereof: Hunting, fishing, swimming, boating, rafting, tubing, camping, picnicking, hiking, pleasure driving, nature study, water skiing, animal riding, motorcycling, snowmobiling, recreational vehicles, winter sports, and viewing or enjoying historical, archeological, scenic, or scientific sites, when done without charge of the owner.

(c) Owner Exempt from Warning. An owner of land owes no duty of care to keep the premises safe for entry by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes. Neither the installation of a sign or other form of warning of a dangerous condition, use, structure, or activity, nor any modification made for the purpose of improving the safety of others, nor the failure to maintain or keep in place any sign, other form of warning, or modification made to improve safety, shall create liability on the part of an owner of land where there is no other basis for such liability.

(d) Owner Assumes No Liability. An owner of land or equipment who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:

1. Extend any assurance that the premises are safe for any purpose.

2. Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

3. Assume responsibility for or incur liability for any injury to person or property caused by an act of omission of such persons.

. . . .

(f) Owner Not Required to Keep Land Safe. Nothing in this section shall be construed to:

1. Create a duty of care or ground of liability for injury to persons or property. . . .

er's immunity from liability under I.C. § 36–1604, the Ambroses' evidence did not support the existence of all elements of the attractive nuisance doctrine with respect to Jared's injury. The Ambroses appeal from this ruling.

## II

Our standard of review on appeal from a summary judgment was concisely stated in *Podolan v. Idaho Legal Aid Services, Inc.,* 123 Idaho 937, 941–42, 854 P.2d 280, 284–85 (Ct.App.1993):

> Summary judgment is appropriate only when there are no genuine issues of material fact and the case can be decided as a matter of law. I.R.C.P. 56(c); *Moss v. Mid–American Fire and Marine Insurance Co.,* 103 Idaho 298, 302, 647 P.2d 754, 758 (1982); *Whitlock v. Haney Seed Co.,* 110 Idaho 347–48, 715 P.2d 1017–18 (Ct. App.1986). Where, as here, a jury has been requested, the nonmoving party is entitled to the benefit of reasonable inferences drawn from the evidentiary facts. *Anderson v. Ethington,* 103 Idaho 658, 660, 651 P.2d 923, 925 (1982); *Whitlock, supra.* The facts are drawn from a review of the record, consisting of the motions, pleadings, affidavits, depositions, and admissions on file. I.R.C.P. 56(c); *Moss, supra.* Controverted facts are viewed in favor of the party resisting the motion. *Whitlock, supra.*
>
> The party opposing the motion may not merely rest on the allegations contained in the pleadings; rather, evidence by way of affidavit or deposition must be produced to contradict the assertions of the moving party. I.R.C.P. 56(e); *Worthen v. State,* 96 Idaho 175, 176, 525 P.2d 957, 958 (1974). Raising the slightest doubt as to the facts is insufficient—a genuine issue of material fact must be presented. *LePelley v. Grefenson,* 101 Idaho 422, 428, 614 P.2d 962, 968 (1980)....

■ Summary judgment dismissing a claim is appropriate when the plaintiff fails to submit evidence to establish an essential element of the claim. *Badell v. Beeks,* 115 Idaho 101, 102, 765 P.2d 126, 127 (1988) *citing Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Garzee v. Barkley,* 121 Idaho 771, 774, 828 P.2d 334, 337 (Ct.App.1992). "In such a situation, there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

## III

■ The purpose of the Recreational Use Statute upon which the school district relies, I.C. § 36–1604, is to "encourage owners of land to make land and water areas available to the public without charge for recreational purposes." I.C. § 36–1604(a); *See also McGhee v. City of Glenns Ferry,* 111 Idaho 921, 729 P.2d 396 (1986). The statute accomplishes this purpose by generally limiting the duty of care owed by the landowner to recreational users. Public entities are landowners under terms of the statute.[2] I.C. § 36–1604(b)(1), (2); *McGhee,* 111 Idaho at 922, 729 P.2d at 397. In the instant case, the school district as owner of the land upon which it allowed Pee Wee baseball games to be played during the summer months, enjoys the protections afforded by I.C. § 36–1604.

■ The statute does not, however, confer absolute immunity upon owners who gratuitously permit recreational use of their property. In *Jacobsen v. City of Rathdrum,* 115 Idaho 266, 270, 766 P.2d 736, 740 (1988), the Idaho Supreme Court concluded that the statute "was intended to insulate landowners only from liability predicated on a duty of care owed to an invitee or licensee." From this premise the Court further concluded

---

2. The Ambroses asked this Court to hold that the statute does not apply to public lands like parks and playgrounds where the public has been expressly or impliedly invited onto the premises. However, the plain language of the statute is to the contrary. The act defines "land" to include "private or public land" and "private or public ways and buildings, structures, and machinery or equipment when attached to or used on the realty," I.C. § 36–1604(b)(1). In *McGhee* the Supreme Court held that this statute applies to public entities as landowners. *See also Bauer v. Minidoka School District No. 331,* 116 Idaho 586, 778 P.2d 336 (1989); *Jacobsen v. City of Rathdrum,* 115 Idaho 266, 766 P.2d 736 (1988); *Corey v. State,* 108 Idaho 921, 703 P.2d 685 (1985).

that "[t]hose who use an owner's land for recreational purposes are entitled to at least the same protection as trespassers are afforded." *Id.* The Supreme Court observed that a landowner owes a duty of care to a trespasser, and thus to a person using the land for recreational purposes, in two circumstances. First, it is a landowner's duty to a trespasser "to refrain from wilful or wanton acts which might cause injuries." *Jacobsen,* 115 Idaho at 270, 766 P.2d at 740, *quoting Huyck v. Hecla Mining Co.,* 101 Idaho 299, 301, 612 P.2d 142, 144 (1980). Second, the landowner may be liable for injuries to a trespassing child under the attractive nuisance doctrine. *Jacobsen* 115 Idaho at 272–73, 766 P.2d at 742–43.

The Ambroses do not contend that the school district engaged in wilful or wanton conduct causing Jared's injury. Therefore, in order for Jared's claim to survive application of the Recreational Use Statute, the claim must fall within Idaho's attractive nuisance doctrine.

## IV

■ The elements of an attractive nuisance claim are set forth in *Bass v. Quinn–Robbins, Co.,* 70 Idaho 308, 312, 216 P.2d 944, 945 (1950):

> To render the owner liable the structure or condition maintained or permitted on his property, must be peculiarly or unusually attractive to children; the injured child must have been attracted by such condition or structure; the owner must know, or the facts be such as to charge him with knowledge, of the condition, and that children are likely to trespass and be injured; the structure or condition must be dangerous and of such a character that the danger is not apparent to immature minds.

This four-part test remains the law in Idaho. *Jacobsen,* 115 Idaho at 272, 766 P.2d at 742; *Hughes v. Union Pacific Railroad Co.,* 114 Idaho 466, 468–69, 757 P.2d 1185, 1187–88 (1988).

■ The threshold issue presented by this appeal is whether the second element of an attractive nuisance claim delineated in *Bass*—that the injured child "must have been attracted by such condition or structure"—requires that the child must have been attracted *onto the defendant's land* by the condition or structure causing the injury, as opposed to merely being attracted to the dangerous instrumentality once the child has entered upon the land. The Ambroses argue that the test simply requires that the child be attracted to the condition or structure even if the child was already on the land for other reasons. We conclude, however, that the attractive nuisance doctrine under Idaho law applies only to children who were attracted onto the defendant's premises by the dangerous object or condition.

Our analysis begins with *Bicandi v. Boise Payette Lumber Co.,* 55 Idaho 543, 551–52, 44 P.2d 1103, 1106 (1935), where the Idaho Supreme Court held that the attractive nuisance doctrine "has application only to cases where children have been injured while on premises where they would be trespassers except for an implied invitation by something thereon which has attracted them." This statement suggests that the hazardous condition must be the inducement for the child's entry onto the premises. More recently, in *Hughes,* 114 Idaho at 469, 757 P.2d at 1188, the Idaho Supreme Court held that Idaho Pattern Jury Instruction 310 is a proper statement of Idaho law on attractive nuisance. That instruction specifies that one of the elements to be proved by the plaintiff is that "the plaintiff was attracted onto the premises by such [condition] [structure]." [3]

---

3. The entire instruction states:
Plaintiff has the burden of proving each of the following propositions:
1. A [structure] [condition] existed on the [defendant's] premises which the defendant knew, or in the exercise of ordinary care should have known, involved a reasonably foreseeable risk of attraction of and harm to children;
2. The [structure] [condition] [maintained] [permitted] on the property was peculiarly or unusually attractive to children;

3. The [condition] [structure] was such that the danger was not apparent to immature minds;
4. The plaintiff was attracted onto the premises by such [condition] [structure];
5. The plaintiff was in the exercise of that degree of care which would be expected from an ordinary child of the same age, experience, knowledge, and discretion under similar circumstances;

Moreover, in affirming a judgment in favor of the defendant railroad, the Court stated that "there was absolutely no testimony that appellant Joe Hughes was in fact attracted to the railroad property by any condition thereon." *Id.* at 469, 757 P.2d at 1188.

■ Finally, any doubt that Idaho law requires attraction onto the land as an element of the attractive nuisance doctrine is dispelled by the *Jacobsen* decision. In that case a child allegedly sustained severe injuries after toppling from a bridge in a city park into a water-filled ditch. Our Supreme Court reiterated the attractive nuisance test drawn from *Bass* and affirmed summary judgment on an attractive nuisance claim because, "the affidavits do not raise genuine issues of material fact as to whether the child was attracted to the park by the bridge." *Jacobsen,* 115 Idaho at 272, 766 P.2d at 742. The Court noted that the evidence indicated that the child went to the park not because of any interest in the bridge, but because he had been there earlier with his family and friends, and because other children were there. *Id.* Hence, under Idaho law, the "attractive nuisance" must be the enticement that draws the child onto the defendant's premises. If the child enters the premises for other reasons, the doctrine does not apply.

### V

■ The Ambroses next contend that even if attraction onto the land is an essential element of the attractive nuisance doctrine, that element is satisfied here because Jared was in fact attracted onto the school district's land by the presence of backstops. They postulate that Jared was attracted to watch a baseball game which was made possible by the existence of backstops on the property. Without the presence of backstops, they reason, no organized baseball game would have been played on the premises, and Jared would not have attended the game. We find this to be a strained rationale which would distort the attraction rule beyond recognition. The uncontroverted evidence, consisting of Jared's own deposition testimony, es-

tablishes that he was taken to the school district's property by his parents to watch an organized baseball game. There is no evidence from which it reasonably can be inferred that the presence of the backstops lured Jared onto the school district's property. Therefore, the attraction element of the attractive nuisance doctrine is not met.

### VI

■ In the alternative to their arguments for application of the traditional attractive nuisance doctrine to the circumstances of Jared's injury, the Ambroses urge this Court to discard that doctrine and to adopt in its stead the theory of liability for injury to trespassing children described in the RESTATEMENT (SECOND) OF TORTS § 339 (1965). The Restatement formulation eliminates the requirement of enticement or attraction to the harmful condition.

Although the Restatement's approach has been adopted in many jurisdictions, *see generally* W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 59, at 401 & n. 14 (5th ed. 1984), it has been expressly rejected by the Idaho Supreme Court. In *Hughes,* 114 Idaho at 469, 757 P.2d at 1188, the Court held that a jury instruction proffered by the plaintiff which was based upon Restatement § 339 did not express Idaho law. In rejecting the plaintiff's argument that Restatement § 339 was adopted as Idaho law in *Daniels v. Byington,* 109 Idaho 365, 707 P.2d 476 (Ct.App. 1985), the Supreme Court stated, "Restatement § 339 does not state the traditional attractive nuisance doctrine, and does not reflect the law of attractive nuisance in Idaho, as set out in the *Bass* case." *Hughes,* 114 Idaho at 469 n. 2, 757 P.2d at 1188 n. 2. Later, in the *Jacobsen* case, Justice Bistline, dissenting, urged adoption of a formulation like that of Restatement § 339, *Jacobsen,* 115 Idaho at 278, 766 P.2d at 748, but the Supreme Court majority was again unpersuaded.

Because the argument advanced by the Ambroses for modification of the attractive

---

6. The [structure] [condition] was a proximate cause of the injury to the plaintiff;

7. The nature and extent of the injuries, the elements of damage, and the amount thereof.

nuisance doctrine has been squarely considered and rejected by the Idaho Supreme Court, we need not consider it further here.

## VII

As noted above, summary judgment dismissing a claim is proper when the plaintiff's evidence fails to establish the existence, or at least raise a factual issue as to the existence, of an essential element of the claim. *Badell*, 115 Idaho at 102, 765 P.2d at 127; *Podolan*, 123 Idaho at 941–42, 854 P.2d at 284–85. Here, no evidence was presented raising a factual issue as to the existence of an essential element of the Ambroses' claim—that the child was attracted onto the defendant's property by the alleged attractive nuisance. Summary judgment was therefore proper.

Because the evidence was insufficient to support the attraction element, there is no need for consideration of the school district's arguments that other elements of an attractive nuisance claim were also absent.

The district court's order granting summary judgment in favor of the school district is affirmed. No attorney fees are awarded on appeal. Costs to respondent.

WALTERS, C.J., and PERRY, J., concur.